UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

JAMES T. TANNER,

                  **Plaintiff,**                        Case No.

       **-against-**

                                              **COMPLAINT**

AUSTIN LLOYD, INC.,
AUSTIN COINS, INC.,
PATRICK J. WHITE,
ERIC P. LESAK (ALIAS "MIKE TODD"),
SEAN KLEIN,
CHARISMA PERRY,
CHRISTIAN FOSTER,
BRANDON E. CHANCEY,
JOHN DOE, AS REPRESENTATIVE OF THE
ESTATE OF CHRISTOPHER M. PARADISE, DECEASED,
P. WHITE HOLDINGS, LLC,
P WHITE INC.,
NEW YORK FEDERAL GOLD, LLC,
CASH MONEY BULLION CORP.,
JUST JOHN, LLC,
CNP13, INC.,
BULLION MUSCLE INC.,
BKGS HOLDINGS, INC. and
CHRISTOPHER PARADISE & ASSOCIATES, INC.,

                  **Defendants.**
_____X

      Plaintiff, James T. Tanner ("Dr. Tanner" or "Plaintiff") complaining of the *Corporate Defendants*, Austin Lloyd, Inc. ("Austin Lloyd") and Austin Coins, Inc. ("Austin Coins"), the *Individual Defendants*, Patrick J. White ("White"), Eric P. Lesak (alias "Mike Todd") ("Lesak"), and Sean Klein ("Klein"), the *Conspiracy Defendants*, Christian Foster ("Foster"), Brandon E. Chancey ("Chancey"), and John Doe, as the Representative of the Estate of Christopher M. Paradise, Deceased ("Paradise"), and the *"Aiding and Abetting" Defendants*, Charisma Perry ("Perry"), P. White Holdings, LLC ("PWH"), P White Inc. ("PWI"), New York Federal Gold,

LLC ("NYFG"), Cash Money Bullion Corp. ("CMBC"), Just John, LLC ("Just John"), CNP13, Inc. ("CNP13"), Bullion Muscle Inc. ("Bullion Muscle"), BKGS Holdings, Inc. ("BKGS"), and Christopher Paradise & Associates, Inc. ("CP&A"),[1] through the undersigned counsel files his Original Complaint and respectfully alleges:

<u>**NATURE OF THE CASE**</u>

**1.**    Plaintiff brings this action pursuant to the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961-1968 (RICO) and New York law. This case involves a primary fraud scheme and a conspiracy to commit fraud by a group of Long Island precious metal coin dealers who conspired to and, in fact, did commit telemarketing coin sales fraud and phony "gold mine" investment fraud against Dr. Tanner and, on information and belief, other elderly citizens[2] through and under the auspices of the Corporate Defendants, Austin Lloyd, Inc. and Austin Coins, Inc. (hereinafter the "Austin Lloyd Enterprise"), a RICO enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(b)-(d)).

**2.**    The Austin Lloyd Enterprise's scheme was conducted by the Individual Defendants and facilitated by the Conspiracy Defendants, with the knowing support of the "Aiding and Abetting" Defendants through an "open-ended" pattern of racketeering activity of specific predicate acts,

---

[1] Discovery may uncover evidence that NYFG, BKGS, and CP&A are hybrid *Corporate* and *"Aiding and Abetting"* Defendants.

[2] Coin fraud targeting the elderly has a long history in the Eastern District of New York. *See, e.g., United States v. Romano*, No. 09-CR-168 (SJ) (VMS), 2013 U.S. Dist. LEXIS 208446, at *19 n.5 (E.D.N.Y. 2013) and the testimony adduced at the criminal RICO coin fraud trial against Michael Romano and William Kearney:

> Patrick Coleman, Defendants' former employee, testified at trial that . . . Mr. Kearney's avowed sales tactics were to "crush weak people" and to "confuse the shit" out of "older people." . . . Daren Mutone, a former employee of Atlantic Coin Galleries, testified at trial that the Atlantic Coin Galleries salespeople would make fun of the victims because they were old and easier to convince. . . . Mr. Mutone testified that the elderly were "easier to push around," and that Mr. Romano and Mr. Kearney would hear the jokes and push the sales staff to sell even more coins to a victim who showed susceptibility to pressure and manipulation.

consisting specifically, in Dr. Tanner's case, of: (1) high-pressure telemarketing phone calls and fraudulent, unconscionably overpriced sales of precious metal numismatic and modern graded bullion coins to Dr. Tanner as "investments,"[3] (2) convincing Dr. Tanner to lend Austin Lloyd one-quarter of a million dollars to "invest" in its "gold mine," and (3) scamming Dr. Tanner into shipping his coin inventory to Austin Lloyd ostensibly to broker sale of the coins but then stealing and converting that inventory, all in furtherance of the Austin Lloyd Enterprise and to enrich themselves, as well as common law fraud, or in the alternative, other torts, resulting in significant damages to Dr. Tanner.

3.    The ***Individual Defendants*** are principals (i.e. White) and officers/representatives/telemarketing agents of the Corporate Defendants, Austin Lloyd and Austin Coins, (i.e, Lesak and Klein) who scammed and defrauded Dr. Tanner, and who, along with the ***Conspiracy Defendants*** (i.e., Defendants Foster, Chancey, and Paradise), as representatives and telemarketing sales agents of the Corporate Defendants, are all members of the Austin Lloyd Enterprise and who maintained an interest in and/or exerted control over the enterprise within the meaning of 18 U.S.C. § 1962(b) and/or who, working in combination to advance the Austin Lloyd Enterprise, and to enrich themselves, had a meeting of the minds, came to an agreement, and conducted and participated to further the Austin Lloyd Enterprise by conspiring within the meaning of 18 U.S.C. § 1962(d) to swindle, defraud, and rob Dr. Tanner and other elderly customers[4] of all or part of their life savings through phony and fraudulent telemarketing coin sales and precious metals investment scams.

---

[3]  On information and belief, the Austin Lloyd telemarketers recorded their telephone conversations with Dr. Tanner and maintain all of those recorded telephone conversations to the present.

[4]  In this Complaint, whenever the term "customer(s)" appears, Plaintiff intends it to mean both "customer(s)" and "consumer(s)."

4.     The ***Individual Defendants*** are all (or represented themselves to be) principals and/or officers of the Corporate Defendants, who working in combination, conspired to, and did in fact, defraud Dr. Tanner (and on information and belief, numerous other Austin Lloyd/Austin Coins customers) in furtherance of the Austin Lloyd Enterprise and to enrich themselves.

5.      The ***"Aiding and Abetting" Defendants***, including, but not limited to, Defendants Perry, PWH, PWI, NYGC, CMBC, Just John, CNP13, Inc., Bullion Muscle, BKGS, and CP&A, also conspired with the Individual Defendants to accomplish the Austin Lloyd Enterprise's fraud schemes against elderly customers of Austin Lloyd and Austin Coins, including Dr. Tanner and/or aided and abetted those fraud schemes with knowledge of said schemes and provided substantial assistance to advance the commission of the fraud schemes and to launder the enterprise's ill-gotten gains.

6.     Even were some or all of the Defendants determined not to have personally committed any predicate acts, each agreed to join the Austin Lloyd Enterprise with knowledge that the predicate acts of coin and precious metals fraud would be committed by some member(s) of the enterprise. Each of the Defendants is liable for the torts of the other co-conspirators.

7.     ***Plaintiff*** James T. Tanner, an 85-year-old retired widower, fell prey to the Individual Defendants' fraudulent scheme in furtherance of the Austin Lloyd Enterprise which has targeted numerous elderly telemarketing customers over a period of years, continuing to the present, and which is facilitated by and conducted through use of the U.S. mail and U.S. wires in violation of 18 U.S.C. §§ 1341, 1343 and which resulted in direct damages to Dr. Tanner in the amount of at least **One Million, Seven Hundred Ninety-Six Thousand, Eight Hundred and 00/100 Dollars**

**($1,796,800.00)** as part of an open-ended,[5] systematic pattern of fraud targeting elderly customers, as well as breach of fiduciary duty resulting in the sales of unconscionably overpriced numismatic and modern graded bullion coins to Dr. Tanner and then offering to broker the sales of such coins while instead simply absconding with and converting the coins.

**8.**    Dr. Tanner seeks to recover of and from the Defendants actual damages, consequential damages, exemplary damages, treble damages under 18 U.S.C. § 1964, statutory treble damages under New York General Business Law § 349, pre- and post-judgment interest, attorneys' fees, litigation expenses and costs of suit.

## PARTIES, JURISDICTION AND VENUE

### *The Parties*

**9.**    Plaintiff, James T. Tanner is a citizen and resident of the State of Kentucky.

---

[5]   Unfortunately, Dr. Tanner is far from the only elderly customer to complain of identical or similar coin fraud "investment" and "consignment sale/appraisal" schemes by the Individual Defendants in furtherance of the Austin Lloyd Enterprise. *See, e.g., Stephen E. Mauch v. Austin Lloyd, Inc., et al*., Case No. 2:22-cv-04180 (E.D.N.Y.) filed July 16, 2022 (alleging similar fraud scheme and damages of $1.8 million to elderly corn farmer); *Jeffrey Miller v. Austin Lloyd, Inc., et al*., Case No. 2:23-cv-06140 (E.D.N.Y.) (alleging similar fraud scheme and damages of $51,300.00 to elderly, retired dentist) filed August 15, 2023; *Allan R. Miller and Cheryl A. Miller v. v. Austin Lloyd, Inc., et al*., Case No. 2:23-cv-06207 (E.D.N.Y.) (alleging similar fraud schemes and damages of $92,000,00 to an elderly couple) filed August 17, 2023; *Earl E. Keith v. Austin Lloyd, Inc., et al.*, Case No. 2:23-cv-09461 (E.D.N.Y.) (alleging similar fraud scheme and damages of over $244,000.00 to 82-year-old victim) filed December 22, 2023; *AnnaMarie F. Eakins v. Austin Lloyd, Inc., Austin Coins, Inc., et al.*, Case No. 2:24-cv-00206 (E.D.N.Y.) (alleging similar fraud schemes and damages of over $580,000.00 to 77-year-old widow and stroke victim); *John H. Fikse v. Austin Lloyd, Inc. and Austin Coins, Inc., et al*., Case No. 2:24-cv-00220  (E.D.N.Y.) (alleging similar fraud schemes and damages of $328,550.00 to 90-year-old victim); *David R. Grindle v. Austin Coins, Inc., et al.*, Case No. 2:24-cv-01125 (E.D.N.Y.) (alleging similar fraud schemes and damages of  $80,000.00 to 72-year-old Wisconsin farmer); *William Kevin Cleary v. Austin Lloyd, Inc., et al.*, Case No. 2:24-cv-01663 (E.D.N.Y.) (alleging similar fraud schemes and damages of $50,000.00 to 78-year-old victim); *Hans B. von Nolde v. Austin Coins, Inc., et al.*; Case No. 2:24-cv-06998 (E.D.N.Y.) (alleging similar fraud schemes and damages of $150,000.00 to 81-year-old victim); and *Bernard Horn-Bostel v. Austin Coins, Inc., et al.*; Case No. 2:24-cv-07131 (E.D.N.Y.) (alleging similar fraud schemes and damages of $124,803.00 to 84-year-old victim). *See also Larry Dale Withers v. Austin Lloyd, Inc., et al.*; and File No. 23-CVS-1024; In the General Court of Justice, Superior Court Division, Pender County, North Carolina (state court coin fraud case). Plaintiff's counsel is in the process of preparing complaints against these same Defendants on behalf of additional elderly telemarketing fraud victims. The foregoing demonstrates an ongoing, open-ended RICO pattern.

10.    Defendant **Austin Lloyd, Inc**.[6] ("Austin Lloyd") is a privately held corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County, New York and a physical business address at 48 S. Service Road, Melville, NY 11747. Austin Lloyd received monies—and facilitated the receipt of monies—by its principals and agents, specifically, the Individual Defendants and Conspiracy Defendants, as well as the "Aiding and Abetting" Defendants, that were defrauded and stolen from Dr. Tanner, and others.

11.    Defendant **Austin Coins, Inc**.[7] ("Austin Coins") is a privately held corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County, New York and a physical business address at 48 S. Service Road, Melville, NY 11747. Austin Lloyd received monies—and facilitated the receipt of monies—by its principals and agents, specifically, the Individual Defendants and Conspiracy Defendants, as well as the "Aiding and Abetting" Defendants, that were defrauded and stolen from Dr. Tanner, and others.

12.    Defendant **Patrick J. White** ("White") is a New York citizen and resident of Suffolk County, New York with a last known residential address at 3 Sweet Hollow Road, Huntington, NY 11743-6530 and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, White is a principal/officer of and controlled Austin Lloyd and Austin Coins, who, together with the other defendants herein, participated in the conduct of the

---

[6]  Because Defendant Austin Lloyd, Inc. is the RICO Enterprise, Plaintiff is not asserting claims against it as a RICO person. However, Plaintiff is asserting certain New York state law claims against Austin Lloyd, Inc. as detailed *infra*.

[7]  Austin Coins is a sister entity to, or de facto successor-in-interest to Austin Lloyd, Inc. which was incorporated in New York on May 5, 2015. Both entities share the same office address and the same principals/officers. Austin Coins was incorporated in New York on June 9, 2020. Austin Coins also still actively markets itself and operates under the d/b/a "Austin Lloyd, Inc." On information and belief, continuing the shell game, White has now phased out, or is in the process of phasing out, Austin Coins' coin telemarketing operations and is shifting those operations to another entity, Defendant New York Federal Gold, LLC ("NYFG").

affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities, and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Dr. Tanner, and others, through a pattern of racketeering activity.

**13.** Defendant **Eric P. Lesak** ("Lesak"), operating under the alias "Mike Todd," [8] and known as "the Closer," is a New York citizen and resident of Nassau County, New York, with a last known residential address at 3494 Clifton Boulevard, Wantagh, NY 11793 and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, Lesak (BOP Register Number 31319-018) is presently incarcerated at the Lewisburg FCI, 2400 Robert F. Miller Drive, Lewisburg, PA 17837 having been convicted of securities fraud. having been convicted of securities fraud. Lesak held himself out as an officer of Austin Lloyd and Austin Coins, as well as a telemarketing sales agent, "Senior Account Advisor," and "investment advisor" for the Corporate Defendants, who participated in the conduct of and controlled the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities (including those of Bullion Muscle Inc. ("Bullion Muscle")) and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) through a pattern of racketeering activity.

---

[8] It is hardly surprising that a twice-convicted recidivist securities fraudster such as Lesak would use an alias. *See* https://www.sec.gov/files/litigation/complaints/2018/comp24239.pdf. Use of a fictitious name makes it difficult, if not impossible, for victims of coin fraudsters' schemes to identify, sue, or serve the actual, specific perpetrator. Further, there is precedent for RICO coin fraud telemarketers to use aliases when interacting with customers. *See United States v. Romano,* No. 09-CR-168 (SJ) (VMS), 2013 U.S. Dist. LEXIS 208446, at *20 n.6 (E.D.N.Y. 2013) (in criminal RICO coin fraud trial, "Michelle Stumpf testified . . . that the Defendants and their salespeople used false names when interacting with customers").

14.    Defendant **Sean Klein** ("Klein") is a New York citizen and resident of New York County, New York with a last known residential address at 261 Hudson Street, Apt. 3F, NY, NY 10013.and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. Klein held himself out as an officer of Austin Lloyd and Austin Coins, as well as a telemarketing sales agent and  "investment advisor" for the Corporate Defendants, who participated in the conduct of and controlled the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Dr. Tanner, and others, through a pattern of racketeering activity.

15.    Defendant **Christian Foster** ("Foster") is a New York citizen and believed to be a resident of Suffolk County, New York, with a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, Foster is or, at all times pertinent was, a telemarketing sales agent and "investment advisor" for the Corporate Defendants, who participated in the conduct of the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities, and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In the alternative, this Defendant was unjustly enriched with funds defrauded from Dr. Tanner (as well as other elderly

victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

16.    Defendant **Brandon E. Chancey** ("Chancey") is a New York citizen and resident of Queens County, New York, with a last known residential address at 4545 Center Blvd., Apt. 18-12 Long Island City, NY 11109.and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, Chancey is or, at all times pertinent was, a telemarketing sales agent and "investment advisor" for the Corporate Defendants, who participated in the conduct of the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities (including those of BKGS Holdings, Inc. ("BKGS"))  and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In the alternative, this Defendant was unjustly enriched with funds defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

17.    Defendant **John Doe, as Representative of the Estate of Christopher M. Paradise, Deceased**, ("Paradise"), is the as-yet-unappointed estate representative of the decedent, Christopher M. Paradise,[9] who passed away on January 26, 2024, was a New York citizen and

---

[9]  Neither Paradise's surviving spouse nor anyone else has sought appointment as representative of the Paradise estate. On September 10, 2024, in the consolidated ALI cases (including *Earl Keith v. Austin Lloyd, Inc., et al.*, 2:23-cv-09461), Plaintiff's counsel requested that Magistrate Judge Dunst issue an order

resident of Suffolk County, New York, with a with a last known residential address at 12 Mallard Cove, Centerpoint, NY 11721-1641 and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, Paradise was at all times pertinent a telemarketing sales agent and "investment advisor" for the Corporate Defendants, who participated in the conduct of the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities (including those of Christopher Paradise & Associates, Inc. ("CP&A")) and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In the alternative, this Defendant was unjustly enriched with funds defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

**18.**  Defendant **Charisma Perry** ("Perry") is a New York citizen and resident of Suffolk County, New York with a last known residential address at 3 Sweet Hollow Road, Huntington, NY 11743. On information and belief, Perry is White's girlfriend or "domestic partner," and she conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else she knowingly aided and abetted the fraud committed against Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the

---

under the All Writs Act, 28 U.S.C. § 1651, compelling the Town Clerk of Oyster Bay to issue a death certificate for Christopher Paradise to Plaintiffs' counsel so that Plaintiffs can institute an administration against Paradise's estate. Plaintiff's request was denied without prejudice.

Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, Perry was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, Perry was unjustly enriched with funds defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

**19.** Defendant **New York Federal Gold, LLC** ("NYFG") is a limited liability company organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, NYFG is a shell company and alter ego of its sole member and principal, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. NYFG received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund NYFG's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

20. Defendant **P. White Holdings, LLC** ("PWH") is a limited liability company organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, PWH is a shell company and alter ego of its sole principal, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. PWH received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund PWH's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's racketeering schemes by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

21. Defendant **P White Inc.** ("PWI") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, PWI is a shell company and alter ego of its sole and managing member, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. PWI received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund

PWI's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

22.  Defendant **Cash Money Bullion Corp.** ("CMBC") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, CMBC is a shell company and alter ego of its sole principal, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. CMBC received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund CMBC's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering

activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

**23.**    Defendant **Just John, LLC** ("Just John") is a limited liability company organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, Just John is a shell company and alter ego of its sole member and principal, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. Just John received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund Just John's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

24.  Defendant **CNP13, Inc.** ("CNP13") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, CNP13 is a shell company and alter ego of its principals, Charisma Perry and/or Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. CNP13 received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund CNP13's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Dr. Tanner, and others, and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Dr. Tanner, and others, by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

25.  Defendant **Bullion Muscle Inc.** ("Bullion Muscle") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 3494 Clifton Boulevard, Wantagh, NY 11793. On information and belief, Bullion Muscle is a shell company and alter ego of its sole principal, Erik P. Lesak (a/k/a "Mike Todd"), who is, or held himself out to be, an officer of Austin Lloyd and Austin Coins. Bullion Muscle received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund Bullion Muscle's own business activities and to fund the business activities of

the Austin Lloyd Enterprise with money defrauded and stolen from Dr. Tanner, and others, and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Dr. Tanner, and others, by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

26.    Defendant **BKGS Holdings, Inc.** ("BKGS") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 49 Franklin St., Northport, NY 11768-3058. On information and belief, BKGS is a shell company and alter ego of its sole principal, Brandon E. Chancey, who is, or held himself out to be, an officer of Austin Lloyd and Austin Coins. BKGS received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund BKGS's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Dr. Tanner, and others, and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Dr. Tanner, and others, by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with

funds defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

27.   Defendant **Christopher Paradise & Associates, Inc.** ("CP&A") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 3 Sweet Hollow Road, Huntington, NY 11743. On information and belief, CP&A is a shell company and alter ego of its sole principal, Christopher M. Paradise, deceased, who held himself out to be, an officer of Austin Lloyd and Austin Coins. CP&A received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund CP&A's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Dr. Tanner, and others, and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Dr. Tanner, and others, by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Dr. Tanner (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

*Jurisdiction and Venue*

28.   This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 18 U.S.C. §1964(c), RICO's civil damages provision. In addition, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because, and insofar as, they

are so related to the federal claims that they form part of the same case or controversy and arise from the same nucleus of operative facts.

29.  In addition, or else in the alternative, this Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a), as Plaintiff is a citizen of Kentucky, and Defendants all are citizens of states other than Kentucky, and the amount in controversy exceeds $75,000 exclusive of interest, costs, and attorneys' fees.

30.  This Court has *in personam* jurisdiction over all Defendants because at all relevant times Defendants conducted their business and fraudulent activities from their offices in this District. Further, all Defendants resided, maintained citizenship, were found, had agents, and are amenable to service in this District.

31.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

### INTRODUCTORY STATEMENT AS TO THE COIN FRAUD INDUSTRY AND THE AUSTIN LLOYD RACKETEERING ENTERPRISE

#### A.    Primer: the Coin *Fraud* Industry

32.  While no one disputes that there are upstanding, reputable precious metals dealers, a criminal subset (the "coin *fraud* industry") operating in the penumbra of those reputable dealers has been a longstanding problem. In late 1983 and early 1984, federal and state authorities initiated a long-awaited crackdown on precious metals dealers operating fraudulent "boiler room" schemes across the country. These precious metals fraudsters and racketeers had bilked investors out of several hundred million dollars.[10] Banking on customers' lack of knowledge, and using the nuances of coin

---

[10]   *See Commodity Investment Fraud II, Hearings Before the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs,* 98th Cong., 2d Sess. 145-88 (1984)*; see also War on Florida Boiler Rooms,* N.Y. Times, Nov. 14, 1983; *Regulating Bullion Dealers,* N.Y. Times, Oct. 31, 1983; *Senate to Study Gold Dealers,* N.Y. Times, Oct. 27, 1983; *Bullion Fraud: Who Protects the Investor?,* Chicago Tribune, Oct. 25, 1983.

collecting, grading, historical factors, and mint populations, unethical coin dealers continue to confuse and confound the average consumer with lies and deceptive claims of significant investment returns and bargains, often rising to the level of, and culminating in, outright fraud and counterfeiting. The United States Senate and various Federal and State agencies and commissions have investigated, and continue to investigate, the criminal underbelly of the precious metals industry.

**B.    The Coin Fraudsters Prey Upon the Elderly.**

**33.**    A decade ago, a United States Senate Special Committee on Aging conservatively estimated that more than "*10,000 Americans have been victimized through these schemes, with losses around $300 million.*"[11] The U.S. Senate Report further revealed that the "*overwhelming number of victims in precious metal fraud are seniors*".[12] Likewise, the FBI has found that corrupt coin dealers intentionally target the elderly specifically "*because they [are] elderly and [the dealers] thought [they] could get away with it"* and that, while the amounts defrauded as to any individual elderly customer may seem small in comparison to certain other more high profile financial frauds, "*it represents a great deal to the victims – it was one man's life savings.*"[13] In fact, most of the fraud advisories and enforcement actions by the Federal and State agencies focus on the financial exploitation of the elderly at the hands of fraudulent coin dealers.[14]

---

[11]   *See Exploring the Perils of the Precious Metals Market*, U.S. Senate Special Committee on Aging, *https://www.aging.senate.gov/download/precious-metals-market-committee-staff-investigation*, at 17 (hereinafter "US Senate Report"*).

[12]    *See* US Senate Report at 16.

[13]   *See Fraudster Targeted Elderly Victims*" https://www.fbi.gov/news/stories/the-case-of-the-corrupt-coin-dealer.

[14]   *See, e.g.,* https://dfpi.ca.gov/2022/02/01/dfpi-sues-to-stop-68-million-precious-metals-and-coin-fraud-targeting-elderly/.

**34.** More recently, the New York Attorney General published a consumer alert specifically warning against "**Coin Swindles**" in which she warns that: "*[s]o called 'rare coins' are often sold to unwary investors who are led to believe that they are a good investment that will increase in value over the years. Representations made about the expected increase in the value of these coins are almost always untrue and part of a scam perpetrated against unsophisticated, often elderly victims.*"[15] In fact, most of the fraud advisories and enforcement actions by Federal and State agencies focus on the financial exploitation of the elderly at the hands of fraudulent coin dealers.[16]

### C. The Austin Lloyd Enterprise

**35.** The person at the apex of the Austin Lloyd Enterprise and the mastermind of its scheme targeting elderly precious metals telemarketing customers is the principal of both Austin Lloyd and Austin Coins, Patrick J. White ("White"). On information and belief, White is a former securities broker who has been permanently barred from working in the securities industry by FINRA,[17] as has his number one telemarketing sales agent, "Senior Account Advisor," "investment" advisor, rogue securities broker, and current involuntary guest of the Federal Bureau of Prisons, Eric P. Lesak (alias "Mike Todd") ("Lesak") who is also a member, and the maleficent driving force, of the Austin Lloyd Enterprise.

---

[15] *See* https://ag.ny.gov/common-investment-scams. Other state attorneys general have also issued precious metals fraud consumer alerts. *See, e.g.,* https://www.texasattorneygeneral.gov/consumer-protection/investing-gold-coins (Texas), https://www.ag.state.mn.us/consumer/publications/-CoinDealers.asp (Minnesota), and https://www.myfloridalegal.com/consumer-protection/how-to-protect-yourself-rare-coin-investment-schemes (Florida).

[16] *See, e.g.,* https://dfpi.ca.gov/2022/02/01/dfpi-sues-to-stop-68-million-precious-metals-and-coin-fraud-targeting-elderly/.

[17] "FINRA" is the Financial Industry Regulatory Authority, a private American corporation that acts as a self-regulatory organization for its member brokerage firms and exchange markets. https://www.finra.org/#/.

36. White and the Austin Lloyd/Austin Coins telemarketing minions (Lesak and Klein), as well as the Conspiracy Defendants (Chancey, Foster, and Paradise), all of whom had a meeting of the minds to scam, defraud, and launder money illegally obtained from elderly customers, with the knowing support of the Aiding and Abetting Defendants (CNP13, Lesak's company, Bullion Muscle, Chancey's company, BKGS, Paradise's company, CP&A, and all of White's various shell companies[18]), controlled, participated in, and/or advanced the criminal operations of the Austin Lloyd Enterprise and cultivated the Austin Lloyd Enterprise into the textbook example of the most egregious serial abusers of elderly coin customers in the entire coin fraud industry to date.

### FACTS COMMON TO ALL OF DR. TANNER'S CAUSES OF ACTION

37. Plaintiff James T. Tanner is an 85-year-old retiree who had the misfortune to cross paths with the members of the Austin Lloyd Enterprise and get snared in a three-part investment scam engineered by White, Lesak, and Klein through which he suffered actual damages detailed and described below.

38. Dr. Tanner was interested in coins and coin collecting purely as a hobby since he was a child. He collected coins that caught his eye and kept them in a drawer in his residence. In early 2021, he purchased a few coins from telemarketing sales agent and Defendant Sean Klein ("Klein") through two New York coin dealers, "All American Gold" and "Island Rarities." Dr. Tanner was satisfied with these coin purchases.

39. On information and belief, Austin Lloyd's and Austin Coins' principal is Individual Defendant, Patrick J. White. In addition, Individual Defendants, Eric P. Lesak (under the alias "Mike Todd") and Sean Klein had the lion's share of telephonic interactions with Dr. Tanner. At all times pertinent, Lesak and Klein were telemarketing sales representatives of Austin Lloyd and

---

[18] Specifically, PWH, PWI, NYFG, CMBC, and Just John.

Austin Coins. Lesak also is known to have held himself out to customers as an "owner," "Senior Investment Advisor," and "Executive Director of Purchasing, and Senior Partner" for Austin Lloyd and Austin Coins.[19] Klein also is known to have held himself out as an officer and "Senior Investment Advisor" for the Corporate Defendants.

**40.** In late January/early February 2021, Klein telephoned Dr. Tanner again seeking to sell him coins, but now Klein told Dr. Tanner that he was working for "Austin Lloyd." Klein offered to sell Dr. Tanner some gold coins as "investments." Dr. Tanner bought the gold coins offered by Klein from Austin Lloyd.

**41.** Shortly thereafter, Klein called Dr. Tanner and introduced him to another Austin Lloyd telemarketer who called himself "Mike Todd" (Lesak). From approximately February 2021 until February 2022, Klein and Lesak, either individually or sometimes in tandem, made repeated telephone calls offering to sell Dr. Tanner coins. At first, the telemarketing calls were friendly and low-key as they tried to cultivate Dr. Tanner's confidence. In reality, the early friendliness was simply part of the con men's scheme they were running to "groom" the "mark," Dr. Tanner, and ultimately scam him out of his life savings through a multi-level "long con."[20]

**42.** As Dr. Tanner fell further under Klein's and Lesak's telemarketing scheme, the repeated calls transformed into unrelenting and increasingly aggressive high-pressure calls to Dr. Tanner through which, based upon representations that the coins they were "hawking" to him were being offered

---

[19] On information and belief, all Austin Lloyd/Austin Coins telemarketers utilize a standardized sales "script" composed and developed by White and Lesak to lure and convince their customers to purchase grossly overpriced coins.

[20] The on-line Dictionary.com defines a "***long con***" as "an elaborate confidence game that develops in several stages over an extended period of time wherein the con man or swindler gains the victim's trust, often bypassing small profits with the goal of reaping a much larger payout in the final maneuver." https://www.dictionary.com/browse/long-con (accessed April 9, 2024).

for sale below market value and that he would be able to resell them quickly for significant profit, he would be able to realize high returns on his "investments" in the coins. Klein and Lesak represented that they and Austin Lloyd would broker the "turnaround" resale of Dr. Tanner's coins when he was ready to sell.

**43.** Klein and Lesak were so successful in promoting Dr. Tanner to purchase the so-called "undervalued" coins as "investments," and convincing him that his coins were appreciating in value and that he should rely upon them as "investment advisors," that he kept buying precious metal coins from them until he simply had no more disposable income or savings to purchase more. Between February 2021 and February 2022, Klein and Lesak alternately sweet-talked, cajoled, and pressured Dr. Tanner into "investing" in 40 coins that were held by Austin Lloyd in a "portfolio" account in the total amount of **$561,999.99**:

**Table 1—Dr. Tanner's Payments to Austin Lloyd for "Portfolio" Coins**

| Date | Description | Payments |
|------|-------------|----------|
| 2/2/2021 | AMEX 3-42002 CC payment to "Austin Lloyd" | $    700.00 |
| 2/19/2021 | AMEX 3-42002 CC payment to "Austin Lloyd" | $    700.00 |
| 2/23/2021 | AMEX 3-42002 CC payment to "Austin Lloyd" | $  1,600.00 |
| 2/26/2021 | AMEX 3-42002 CC payment to "Austin Lloyd" | $  1,500.00 |
| 2/28/2021 | AMEX 3-42002 CC payment to "Austin Lloyd" | $    950.00 |
| 3/1/2021 | AMEX 3-42002 CC payment to "Austin Lloyd" | $  1,050.00 |
| 3/1/2021 | AMEX 3-42002 CC payment to "Austin Lloyd" | $  9,100.00 |
| 3/2/2021 | AMEX 3-42002 CC payment to "Austin Lloyd" | $  7,000.00 |
| 3/2/2021 | AMEX 3-42002 CC payment to "Austin Lloyd" | $  5,000.00 |
| 3/3/2021 | AMEX 3-42002 CC payment to "Austin Lloyd" | $  6,600.00 |
| 3/8/2021 | AMEX 3-42002 CC payment to "Austin Lloyd" | $  2,000.00 |
| 3/8/2021 | AMEX 3-42002 CC payment to "Austin Lloyd" | $  3,400.00 |
| 3/9/2021 | AMEX 3-42002 CC payment to "Austin Lloyd" | $  5,400.00 |
| 3/9/2021 | AMEX 3-42002 CC payment to "Austin Lloyd" | $ 16,500.00 |
| 3/9/2021 | AMEX 3-42002 CC payment to "Austin Lloyd" | $  9,800.00 |
| 3/10/2021 | AMEX 3-42002 CC payment to "Austin Lloyd" | $  3,500.00 |
| 3/11/2021 | Chase Ink 9241 CC payment to "Austin Lloyd" | $ 20,200.00 |
| 3/12/2021 | Chase Ink 9241 CC payment to "Austin Lloyd" | $ 14,000.00 |
| 3/16/2021 | Chase 3583 CC payment to "Austin Lloyd" | $ 14,500.00 |
| 3/26/2021 | "Cash Express 888-899-0399" Sean [Klein] | $  7,600.00 |
| 3/26/2021 | "Cash Express 888-899-0399" Mike [Eric Lesak] | $  6,600.00 |
| 4/1/2021 | *Whitaker Bank (electronic) Check No. 7093 to "Austin Lloyd, Inc."  pd | $ 10,100.00 |
| 4/2/2021 | *Whitaker Bank (electronic) Check No. 7093 to "Austin Lloyd, Inc."  pd | $ 10,100.00 |
| 4/19/2021 | Whitaker Bank (handwritten) Check No. 7099 to "Austin Lloyd" | $ 10,100.00 |
| 5/4/2021 | Sam's Club MC 9995 CC payment to "Austin Lloyd" | $  7,000.00 |
| 5/13/2021 | Whitaker Bank (9694) Check No. 1003 | $100,000.00 |
| 5/17/2021 | Chase 3583 CC payment to "Austin Lloyd" | $  9,999.99 |

| | | |
|---|---|---|
| 5/17/2021 | Chase 3583 CC payment to "Austin Lloyd" | $ 10,000.00 |
| 5/17/2021 | Delta SkyMiles 5-45008 CC payment to "Austin Lloyd" | $ 20,000.00 |
| 5/19/2021 | Chase 3583 CC payment to "Austin Lloyd" | $ 6,550.00 |
| 5/19/2021 | Chase 3583 CC payment to "Austin Lloyd" | $ 4,450.00 |
| 5/19/2021 | Chase Ink 9241 CC payment to "Austin Lloyd" | $ 2,500.00 |
| 5/28/2021 | Whitaker Bank (9694) Check No. 1005 | $ 20,000.00 |
| 9/30/2021 | Whitaker Bank (9694) Check No. 1073 to "Austin Lloyd, Inc." for "coin | $100,000.00 |
| 11/24/2021 | Whitaker Bank (9694) Wire Payment to "Austin Lloyd Wires" | $ 70,000.00 |
| 12/10/2021 | BP/Amoco CC (9634) payment to "Austin Lloyd" | $ 20,000.00 |
| 12/10/2021 | Whitaker Bank (0866) Check No. 1078 | $ 8,500.00 |
| 1/6/2022 | Whitaker Bank (0866) Wire Payment to "Austin Lloyd Inc. Wires" | $ 6,000.00 |
| 2/3/2022 | Whitaker Bank (9694) Wire Payment to "Austin Lloyd Wires" | $ 9,000.00 |
| | | $561,999.99 |

**44.** In addition, Dr. Tanner made additional purchases for coins were shipped to him. The sales prices of those coins totaled **$749,430.00**. In total, Dr. Tanner invested **$1,311,429.99** in coins from Defendants:

### Table 2—Table of <u>All</u> Coins Purchased from the Austin Lloyd Enterprise

| Description | # coins | Intial Investment | Value per "Mike Todd" (Eric Lesak) |
|---|---|---|---|
| 1890-S  $20 Gold Liberty MS62 | 1 | (portfolio) | $ 19,760.00 |
| 1900  $20 Gold Liberty MS62 | 1 | (portfolio) | $ 13,900.00 |
| 1901-S $10 Gold Liberty MS66 | 1 | $ 9,300.00 | $ 18,500.00 |
| 1904  $20 Gold Liberty MS62 | 1 | (portfolio) | $ 15,850.00 |
| 1908  $20 Gold Saint Gaudens MS65 | 1 | (portfolio) | $ 16,000.00 |
| 1914 $10 Canadian  Gold PCGS CERT. MS64+ | 1 | $ 9,500.00 | $ 19,500.00 |
| 1928 $20 Gold Saint Gaudens MS66+ ***POP 1 Graded Higher*** | 1 | $ 73,000.00 | $ 26,000.00 |
| 1984  $20 Gold Liberty MS62 | 1 | (portfolio) | $ 15,000.00 |
| 1987 S $1 Silver American Eagle PR70  Mercanti | 1 | (portfolio) | $ 4,850.00 |
| 1987 S $1 Silver American Eagle PR70 Mercanti | 4 | $ 14,000.00 | $ 19,400.00 |
| 1988 $10 Gold American Eagle PR70 Moy | 1 | (portfolio) | $ 10,000.00 |
| 1988 $25 Gold American Eagle PR70 Moy | 1 | (portfolio) | $ 12,750.00 |
| 1988 $50 Gold American Eagle PR70 Moy | 1 | $ 14,900.00 | $ 24,000.00 |
| 1988 $50 Gold American Eagle PR70 Moy | 1 | (portfolio) | $ 24,000.00 |
| 1988 $50 Gold American Eagle PR70 Moy | 1 | (portfolio) | $ 24,000.00 |
| 1988 $50 Gold American Eagle PR70 Moy | 2 | (portfolio) | $ 48,000.00 |
| 1988 $50 Gold American Eagle PR70 Moy | 3 | $ 30,000.00 | $ 72,000.00 |
| 1988 $50 Gold American Eagle PR70 Moy | 1 | (portfolio) | $ 24,000.00 |
| 1988 Gold American Eagle 4-coin set PR70 Moy | 1 | $ 52,000.00 | $ 49,000.00 |
| 1988 W $50 Gold American Eagle PR70 Moy | 1 | (portfolio) | $ 24,000.00 |
| 1989 $1 Silver American Eagle MS70 Mercanti | 1 | $ 2,600.00 | $ 6,850.00 |
| 1989 $1 Silver American Eagle MS70 Mercanti | 2 | $ 5,200.00 | $ 13,700.00 |
| 1989 $50 Gold American Eagle MS70 | 1 | (portfolio) | $ 15,000.00 |
| 1989 $50 Gold American Eagle PR70 Moy | 1 | (portfolio) | $ 18,600.00 |
| 1990 $10 Gold American Eagle MS70 ***POP 31*** | 1 | (portfolio) | $ 14,000.00 |
| 1990 $50 Gold American Eagle PR70 Moy | 1 | (portfolio) | $ 16,000.00 |
| 1990 $50 Gold American Eagle PR70 Moy | 2 | $ 12,550.00 | $ 32,000.00 |
| 1990 $50 Gold American Eagle PR70 Moy | 2 | $ 15,000.00 | $ 32,000.00 |

| | | | |
|---|---|---|---|
| 1990 $50 Gold American Eagle PR70 Moy | 1 | $ 20,500.00 | $ 16,000.00 |
| 1990 $50 Gold American Eagle PR70 Moy | 1 | $ 20,000.00 | $ 16,000.00 |
| 1990 $50 Gold American Eagle PR70 Moy | 1 | $ 23,000.00 | $ 16,000.00 |
| 1990 W $50 Gold American Eagle PR70 Moy | 1 | (portfolio) | $ 16,000.00 |
| 1991 $1 Silver American Eagle MS70 Mercanti | 1 | (portfolio) | $ 11,500.00 |
| 1991 $1 Silver American Eagle MS70 Mercanti | 1 | $ 6,000.00 | $ 11,500.00 |
| 1991 $25 Gold American Eagle PR70 Moy | 4 | $ 22,000.00 | $ 56,000.00 |
| 1991 Gold American Eagle 4-coin set PR70 Moy | 1 | (portfolio) | $ 23,500.00 |
| 1992 $25 Gold American Eagle MS70 | 1 | $ 5,400.00 | $ 12,450.00 |
| 1994 $10 Gold American Eagle MS70 | 2 | $ 25,000.00 | $ 11,750.00 |
| 1995 $25 Gold American Eagle MS70 | 1 | (portfolio) | $ 10,500.00 |
| 1995 $50 Gold American Eagle PR70 Moy | 2 | $ 15,000.00 | $ 37,400.00 |
| 1995 $50 Gold American Eagle PR70 Moy | 1 | (portfolio) | $ 18,700.00 |
| 1995 W $50 Gold American Eagle PR70 Moy | 2 | $ 15,000.00 | $ 37,400.00 |
| 1996 $1 Silver American Eagle MS70 Mercanti | 1 | (portfolio) | $ 23,000.00 |
| 1996 $25 Gold American Eagle MS70 | 1 | $ 6,600.00 | $ 13,500.00 |
| 1997 $25 Gold American Eagle MS70 | 1 | $ 5,400.00 | $ 13,000.00 |
| 1998 $25 Gold American Eagle MS70 | 2 | $ 56,000.00 | $ 27,000.00 |
| 1999 $1 Silver American Eagle MS70 Mercanti | 1 | $ 22,000.00 | $ 42,500.00 |
| 1999 $25 Gold American Eagle MS70  ***VERY LOW POP*** | 1 | (portfolio) | $ 16,250.00 |
| 1999 $50 Gold American Eagle PR70 Moy | 1 | $ 10,100.00 | $ 19,600.00 |
| 1999 $50 Gold American Eagle PR70 Moy | 1 | $ 11,200.00 | $ 8,000.00 |
| 2001 $25 Gold American Eagle PR70 Moy | 1 | (portfolio) | $ 10,000.00 |
| 2001 $50 Gold American Eagle PR70 Moy | 1 | (portfolio) | $ 14,700.00 |
| 2001 W $10 Gold American Eagle MS70 | 2 | (portfolio) | $ 9,800.00 |
| 2001-W 1999 $1 Silver American Eagle PR70 Mercanti | 1 | $ 18,500.00 | $ 6,850.00 |
| 2002 P $1 Silver American Eagle MS70 Mercanti | 2 | $ 5,100.00 | $ 9,700.00 |
| 2002 P $1 Silver American Eagle MS70 Mercanti | 3 | $ 7,650.00 | $ 14,550.00 |
| 2007 W 4-Coin Set Michael Reagan Signature Series PR70 | 1 | (portfolio) | $ 28,000.00 |
| 2008 $25 Gold American Eagle PR70 Moy | 1 | (portfolio) | $ 9,750.00 |
| 2008 $50 Gold American Eagle PR70 Moy | 2 | $ 13,500.00 | $ 37,000.00 |
| 2008 $50 Gold American Eagle PR70 Moy | 1 | $ 15,000.00 | $ 18,500.00 |
| 2008-W $50 Gold Buffalo PR70 Moy | 1 | $ 10,000.00 | $ 26,000.00 |
| 2010 $25 Gold American Eagle PR70 Moy | 1 | (portfolio) | $ 10,200.00 |
| 2010 $50 Gold American Eagle PR70 Moy | 1 | $ 7,000.00 | $ 18,500.00 |
| 2011 $25 Gold American Eagle PR70 Moy | 1 | $ 15,000.00 | $ 10,400.00 |
| 2011 Gold American Eagle 4-coin set PR70 Moy | 1 | $ 10,000.00 | $ 25,000.00 |
| 2012 $50 Gold American Eagle PR70 Moy | 1 | (portfolio) | $ 18,500.00 |
| 2012 $50 W Gold American Eagle PR70 | 1 | $ 6,600.00 | $ 18,500.00 |
| 2012 4-Coin Set Edmund Moy Signature Series PMS70 | 1 | $ 13,000.00 | $ 24,600.00 |
| 2013 4-Coin Set Edmund Moy Signature Series MS70 | 1 | $ 10,700.00 | $ 23,000.00 |
| 2014 $50 Gold American Eagle PR70 Moy | 1 | $ 7,480.00 | $ 23,000.00 |
| 2014 $50 Gold American Eagle PR70 Moy | 3 | (portfolio) | $ 69,000.00 |
| 2014 4-Coin Set Edmund Moy Signature Series MS70 | 1 | $ 13,400.00 | $ 25,000.00 |
| 2014 Gold American 4-Coin Set PR70 Reagan | 1 | $ 9,100.00 | $ 24,750.00 |
| 2014 W $50 Gold American Eagle PR70 Moy | 1 | $ 25,000.00 | $ 23,000.00 |
| 2014 W $50 Gold American Eagle PR70 Moy | 1 | $ 8,800.00 | $ 23,000.00 |
| 2018 Gold Panda Set MS70 | 1 | $ 9,800.00 | $ 17,000.00 |
| 2018 W $100 Palladium American Eagle MS70   Cleveland | 3 | (portfolio) | $ 84,000.00 |
| 2019 $25 Gold American Eagle MS70 | 1 | $ 60,000.00 | $ 14,500.00 |
| 2021 $1 Silver American Eagle MS70  Mercanti | 1 | $ 950.00 | $ 2,500.00 |
| 2021 $1 Silver American Eagle MS70 Early Release  Mercanti | 1 | $ 1,050.00 | $ 2,545.00 |
| 2021 $1 Silver American Eagle MS70 Early Release  Mercanti | 1 | (portfolio) | $ 2,545.00 |
| 2021 $1 Silver American Eagle MS70 Mercanti | 1 | $ 1,050.00 | $ 2,500.00 |
| 2021 S $1 Silver American Eagle MS70 Mercanti | 1 | $ 1,500.00 | $ 2,500.00 |
| **Total without portfolio amount** | **108** | **$771,430.00** | **$ 1,735,600.00** |
| **Total Funds invested into the 40 "Portfolio" coins** | | **$561,999.99** | |
| **TOTAL FUNDS INVESTED IN COINS** | | **$ 1,333,429.99** | |

45.  In a twist, Defendant Lesak also convinced Dr. Tanner to provide a loan at a high interest rate (20%) to invest in Austin Lloyd's "Gold Mine" in Tanzania.  On or about November 28, 2022, Dr. Tanner loaned Austin Lloyd, Inc. $250,000.00 whereby Dr. Tanner would receive 5% return on his loan every quarter until repaid. This is a typical Ponzi scheme whereby investors are paid until the Ponzi scheme can no longer support the payments.  This second fraud collapsed in early 2024, resulting in Dr. Tanner losing **$61,200.00**, to wit:

**Table 3: Gold Mine Ponzi Scheme**

| DATE | Financial Transacation | | Amount |
|------|------------------------|--|--------|
| 11/28/2022 | **Loan Agreement**--James Tanner to Austin Lloyd, Inc. | $ | 200,000.00 |
| | **Loan Addendum:** 20 gold $10 coins pre-1933 sold by Austin Lloyd for $50,000. Proceeds added to loan for the total: $250,000 for investing in ALI's "gold mine." | $ | 50,000.00 |
| 2/13/2022 | Wire from ALI  to Tanner *[9694]* (Whitaker Bank) | $ | (28,800.00) |
| 5/12/2023 | Wire from ALI to Tanner  *[0866]* (Whitaker Bank) | $ | (12,500.00) |
| 8/14/2023 | Wire from P. White, Inc  to Tanner [*0866*]  (Whitaker Bank) | $ | (50,000.00) |
| 9/18/2023 | Wire from ACI  to Tanner [*9694*]  (Whitaker Bank) | $ | (15,000.00) |
| 11/16/2023 | Wire from ACI to Tanner [*9694*] (Whitaker Bank) | $ | (17,500.00) |
| 12/6/2023 | Wire from ACI ] to Tanner [*9694*] (Whitaker Bank) | $ | (30,000.00) |
| 1/12/2024 | Wire from "Austin Coins" to Tanner [*9694*]  (Whitaker Bank) | $ | (15,000.00) |
| 3/4/2024 | Wire from "Austin Coins" to Tanner [*9694*]  (Whitaker Bank) | $ | (20,000.00) |
| | **Losses on Gold Mine** | **$** | **61,200.00** |

46.  Dr. Tanner began declining Klein's and Lesak's offers to purchase more coins, but they became increasingly aggressive—almost demanding that he continue "investing" in the coins they marketed to him. Worse, Dr. Tanner's wife passed away on July 5, 2021, leaving him increasingly vulnerable in his grief to Klein's and Lesak's high-pressure tactics, especially given his increasingly precarious financial situation.

47.  When Dr. Tanner requested that Austin Lloyd make good on Klein's and Lesak's representations that: (1) his coins had been good "investments" and had increased in value and (2) Austin Lloyd would broker the sale of the coins to provide him with needed cash, Klein and Lesak deflected and simply refused to return Dr. Tanner's calls. Finally, Dr. Tanner was able to contact Lesak and Klein who agreed to appraise his coins and sell them.  Dr. Tanner shipped all the coins

in his possession for appraisal along with the coins held in portfolio for the Defendants to sell.  On or about April 25, 2021, Lesak (aka Mike Todd) provided Dr. Tanner an appraisal that stated that the coins were worth $1,735,600.00 as reflected on Table 2, above.

**48.**    However, no such sales occurred, and Dr. Tanner became worried. Dr. Tanner called and managed to speak with Defendant White, and he sought White's assistance in "cashing out" his coin inventory. White, too, failed Dr. Tanner by refusing to assist him to "cash out" the coin inventory as he requested and in accordance with Klein's and Lesak's representations. However, the Defendants studiously avoided any further conversations with Dr. Tanner and refused to return his calls.  In effect, they were able to steal back the very coins they had sold to Dr. Tanner.

**49.**    The principal (White) and telemarketing agents (Lesak and Klein) of Austin Lloyd and Austin Coins, all of whom are members of the Austin Lloyd Enterprise, conspired with one another from day one to run a confidence scheme on Dr. Tanner to convince him to purchase hundreds of thousands of dollars of precious metal coins as "investments" and thereby abscond with his life savings. The ultimate goal of the Defendants, and the primary, if not entire, business model of Austin Coins and the Austin Lloyd Enterprise, is to defraud and impoverish elderly customers and by so doing to enrich themselves. As a direct and/or proximate result of the Defendants' above-described wrongful acts and practices, the elderly Dr. Tanner has suffered (and continues to suffer) devastating economic damages, which Defendants refuse to remedy.

### ADDITIONAL FACTS REGARDING THE AUSTIN LLOYD ENTERPRISE AND THE "*AIDING AND ABETTING*" DEFENDANTS

**50.**    In 2023, dueling lawsuits involving principals of Austin Lloyd brought to light the identities of additional persons and entities that knowingly agreed to aid and abet the fraud schemes of the

members of the Austin Lloyd Enterprise.[21]

**51.** Before becoming the principal owner and mastermind of Austin Lloyd and Austin Coins, White was a principal/half owner in another "rare coin" business ("New York Rarities Limited Liability Company" which White organized on August 19, 2016) with partners Thomas Laviano and Jillian Laviano providing the capital for the business. According to the lawsuit of *New York Rarities Limited Liability Company, Thomas Laviano and Jullian Laviano v. Patrick White, Charisma Perry, et al.*, Index No. 607542/2017 (Supreme Court, Nassau County), the Lavianos discovered that White and Perry were running the same types of coin fraud scams through New York Rarities that victimized Plaintiff in this suit.

**52.** When White and the Lavianos had a "falling out" (i.e., when White got caught, and the Lavianos filed suit), White approached family friend Jenson Adoni ("Adoni") in 2017 about partnering with him in the coin business. White and Adoni used an existing New York corporation that Adoni's father previously had formed under the name of "Austin Lloyd, Inc." White began coin telemarketing operations as "Austin Lloyd, Inc." and assembled a sales staff, many of which, like White, were barred, suspended, or disciplined by FINRA and/or the SEC for illegal or unethical sales practices. The sales and operations staff included Lesak and Klein.[22]

**53.** In or around 2022, Adoni contends that he discovered multiple "red flags" in White's operation of Austin Lloyd and attempted to reign in White and his rogue coin telemarketing sales team, particularly Lesak and Klein. By January 2023, White made overtures to "buy-out" Adoni's

---

[21] The referenced lawsuits are : (1) *Patrick White and Austin Lloyd, Inc. v. Jensen Adoni, et al.*; Index No. 60476/2023; In the New York Supreme Court, Suffolk County and (2) *Jensen Adoni, individually and derivatively on behalf of Austin Lloyd, Inc. v. Austin Coins, Inc., et al*.; Index No 621767/2023; In the New York Supreme Court, Suffolk County.

[22] On page 17, paragraph 129 of the complaint in *Adoni v. Austin Coins, et al.*, Adoni contends that "White made [Austin Lloyd, Inc.] a haven for disgraced brokers because they could employ sales tactics which were utilized to sell stocks in an industry that was generally unregulated."

interest in Austin Lloyd. Adoni contended that Austin Lloyd had sales in excess of $29,000,000 in 2022 alone, with profits of more than $12,000,000.

54.  In February 2023, Adoni discovered that White had organized a separate New York corporation, Austin Coins, Inc. ("Austin Coins") and alleges that White had been making sales from Austin *Lloyd's* coin inventory but funneling the proceeds of those sales into Austin *Coins*.

55.  White ran Austin Lloyd and Austin Coins as a single entity and failed to observe corporate formalities. In fact, Austin Coins continues to do business as "Austin Lloyd, Inc." For all practical purposes, Austin Lloyd and Austin Coins are run as one and the same, and their funds and finances are commingled.

56.  Austin Lloyd's Chase bank account records for <u>January 2022 through February 2023</u> document the following transactions involving certain of the Individual Defendants and "Aiding and Abetting" Defendants in this case:

- **$821,732.65** in transfers from Austin Lloyd to Charisma Perry ("Perry"), White's *inamorata*[23]

- **$1,805,220.52** in transfers from Austin Lloyd directly to White, to PWH, to PWI or to White's American Express credit card

- **$1,422,154.54** in cash withdrawals (by White)

- **$1,745,000** in transfers from Austin Lloyd to Lesak's company, Bullion Muscle

- **$620,000** via six (6) payments from Austin Lloyd to Klein (via wire transfers).

57.  Adoni's complaint further asserts that Austin Lloyd and White made payments and transfers to White's other companies, the "Aiding and Abetting Defendants," NYFG, CMBC, and Just John,

---

[23] In a Request for Information [Dkt. No. 112] filed in the *White v. Adoni, et al.* case (Index No. 60476/2023), it appears that between January 2022 and December 2022—one calendar year—Perry actually received **over $3 million** from Austin Lloyd.

and to CNP13 (owned by White and/or Perry), thereby converting and attempting to launder monies that White and the Austin Lloyd Enterprise had defrauded and stolen from elderly telemarketing customers, such as Dr. Tanner.

## CLAIMS FOR RELIEF/CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) AGAINST *ALL DEFENDANTS* FOR CONSPIRACY TO PARTICIPATE IN AND COMMIT A PATTERN OF MAIL AND WIRE FRAUDS AND MONEY LAUNDERING

**58.**  Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**59.**  At all relevant times, Plaintiff was a "person" within the meaning of 18 U.S.C. § 1964(c).

**60.**  At all relevant times, Austin Lloyd, Inc. was an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

**61.**  At all relevant times, Individual Defendant White was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

**62.**  At all relevant times, Corporate Defendant Austin Coins, Inc. was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

**63.**  At all relevant times, each of the Individual Defendants, White, Lesak (aka "Mike Todd"), and Klein, and each of the Conspiracy Defendants, Chancey, Foster, and Paradise, was a "person" within the meanings of 18 U.S.C. §§ 1961(3), 1962(c), and 1962(d) and, to the extent that each "acquire[d] or maintain[ed], directly or indirectly, any interest in or control of" the Austin Lloyd Enterprise, 1962(b).

**64.**  The Individual Defendants, the Conspiracy Defendants, and Austin Coins, as members of the Austin Lloyd Enterprise had a meeting of the minds and agreed to commit a series of predicate acts

consisting of mail and wire frauds, as well as money laundering, constituting a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) against Dr. Tanner, and numerous other elderly customers, as detailed *supra*, in violation of 18 U.S.C. § 1962(d). The particular predicate acts of the conspiracy against multiple elderly telemarketing customers, including Dr. Tanner, began no later than 2020[24] and continue through the present. The Individual Defendants, White and Lesak (aka "Mike Todd"), and Corporate Defendant, Austin Coins, each participate in the Austin Lloyd Enterprise by taking at least some part in controlling and directing the affairs of said enterprise, and the Individual Defendants, Lesak (aka "Mike Todd") and Klein, who directly interacted with Plaintiff as telemarketing sales agents or representatives of Austin Coins and as persons associated with the Austin Lloyd Enterprise, agreed to facilitate and commit the individual predicate acts of fraud and money laundering as part of the fraudulent scheme targeting numerous elderly customers, and Dr. Tanner in particular, in furtherance of the Austin Lloyd Enterprise and to enrich themselves.

**65.** This conspiracy violated 18 U.S.C. § 1962(c) in that it consisted of a pattern of racketeering activity, specifically multiple instances of mail fraud (in violation of 18 U.S.C. § 1341), wire fraud (in violation of 18 U.S.C. § 1343), and money laundering (in violation of 18 U.S.C. § 1956(a)(1)). White, as principal, and, on information and belief, Lesak, Klein, Foster, Chancey, and Paradise, as officers and/or representatives of the Austin Lloyd Enterprise, knew that the telemarketing sales practices and tactics were misleading and unlawful and would cause their elderly customers, including Plaintiff, to suffer damages that were reasonably foreseeable by them and/or anticipated

---

[24] One of the victims whose case is referenced in footnote 4, *supra*, Stephen E. Mauch, alleged in his Complaint that he was first contacted by these same telemarketing defendants in early 2021. Another elderly victim, AnnaMarie F. Eakins, alleges that the scheme by these same telemarketing defendants to defraud her and steal her coin inventory began in mid-2021. Dr. Tanner's first interactions with members of the Austin Lloyd Enterprise were in 2021. Thus, it is clear that Defendants have been running a coin fraud telemarketing racket against elderly customers for over three (3) years.

as a substantial factor and a natural consequence of their pattern of unlawful activity.

**66.** White, as principal, and, on information and belief, Lesak, Klein, Foster, Chancey, and Paradise, as officers and/or representatives, are members of the Austin Lloyd Enterprise and as co-conspirators are liable for all of the actions committed by all of the co-conspirators within the conspiracy and are liable for all of the damages sustained by Plaintiff that were caused by any of the members of the conspiracy, regardless of whether they were themselves directly involved in any *particular* aspect of the Austin Lloyd Enterprise.

**67.** The pattern of unlawful activity conducted as individuals and in their representative capacities as principals and representatives of the Austin Lloyd Enterprise, by White, as principal, and, on information and belief, by Lesak and Klein, as well as Foster, Chancey, and Paradise, as officers, and/or representatives, proximately and/or directly caused Plaintiff to suffer injury to his business and/or property within the meaning of 18 U.S.C. § 1964(c).

**68.** At all relevant times, each of the "Aiding and Abetting" Defendants, Charisma Perry ("Perry"), New York Federal Gold, LLC ("NYFG"), P. White Holdings, LLC ("PWH"), P White Inc. ("PWI"), Cash Money Bullion Corp. ("CMBC"), Just John, LLC ("Just John"), CNP13, Inc. ("CNP13"), Bullion Muscle Inc. ("Bullion Muscle"), BKGS Holdings, Inc. ("BKGS"), and Christopher Paradise & Associates, Inc. ("CP&A"), was a "person" within the meanings of 18 U.S.C. §§ 1961(3), 1962(c), and 1962(d), and each of them agreed to join the Austin Lloyd Enterprise with knowledge that White and the Individual Defendant members of the enterprise would commit and were committing multiple predicate acts of mail and wire fraud and money laundering and that the exorbitant financial fruits of those predicate acts of fraud and money laundering were being transferred from and through the Austin Lloyd Enterprise to the "Aiding and Abetting" Defendants via multiple transfers in order to "launder" and hide those funds from

Plaintiff and other elderly victims of the Austin Lloyd Enterprise.

**69.**   As a direct and proximate result of the violations set forth above, Dr. Tanner has been injured. The Individual Defendants', Conspiracy Defendants', and "Aiding and Abetting" Defendants' 18 U.S.C. § 1962(d) conspiracy to violate 18 U.S.C. § 1962(c) is the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Dr. Tanner is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest, and attorneys' fees.

**COUNT II**

**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) AGAINST THE *AIDING AND ABETTING DEFENDANTS* FOR AIDING AND ABETTING MONEY LAUNDERING**

**70.**   Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**71.**   Plaintiff further incorporates by reference all factual statements and allegations set out in Count III, *infra*, and Count IV, *infra*, as if fully copied and set forth below at length.

**72.**   Each of the "Aiding and Abetting" Defendants, Charisma Perry ("Perry"), New York Federal Gold, LLC ("NYFG"), P. White Holdings, LLC ("PWH"), P White Inc. ("PWI"), Cash Money Bullion Corp. ("CMBC"), Just John, LLC ("Just John"), CNP13, Inc. ("CNP13"), Bullion Muscle Inc. ("Bullion Muscle"), BKGS Holdings, Inc. ("BKGS") and Christopher Paradise & Associates, Inc. ("CP&A"), had knowledge of the primary RICO frauds of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341, 1343 by the Individual Defendants, Lesak and Klein, as well as White, Chancey, Foster, and Paradise, in furtherance of the Austin Lloyd Enterprise and the primary RICO fraud of money laundering in violation of 18 U.S.C. § 1956(a)(1)).

**73.**   Each of the "Aiding and Abetting" Defendants, provided substantial assistance in the money laundering operation of the Individual Defendants in furtherance of the Austin Lloyd Enterprise by receiving, accepting, and retaining monies from the Austin Lloyd Enterprise with

knowledge that he/she/it was helping to launder and hide the financial fruits of the primary frauds perpetrated by the Individual Defendants against Dr. Tanner and the numerous other elderly victims of the Austin Lloyd Enterprise.

**74.** As a direct and proximate result of the violations set forth above, Dr. Tanner has been injured. The "Aiding and Abetting" Defendants' 18 U.S.C. § 1962(d) conspiracy to violate 18 U.S.C. § § 1956(a)(1) is the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Dr. Tanner is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest, and attorneys' fees.

## COUNT III

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) AGAINST THE *INDIVIDUAL DEFENDANTS* FOR MAIL FRAUD AND WIRE FRAUD (18 U.S.C. §§ 1341, 1343)

**75.** Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**76.** By the acts described herein, the Individual Defendants, including White, Lesak (aka "Mike Todd"), and Klein, as members of the Austin Lloyd Enterprise, knowingly executed or intentionally participated in a scheme that defrauded, and was intended to defraud, Dr. Tanner, and numerous other elderly citizens, and employed the use of the mails, as an integral part of said scheme and in furtherance thereof.

**77.** Central to, and in furtherance of, that scheme, and as described above, the Individual Defendants, in their capacities of telemarketing sales agents, principals of Austin Coins, and "investment advisors," made grossly inaccurate misrepresentations over the telephone to Dr. Tanner as to the: (1) grade of the coins, (2) the fair market value of the coins and (3) the investment potential of the coins they advised him to purchase from Austin Lloyd and, taking advantage of his reliance on such misrepresentations, overcharged him for those coins by factors of hundreds of

times more than any commercially supported price for the coins. The Individual Defendants' use of the wires in perpetrating their schemes was not merely incidental to their fraud and misrepresentations as to grade and value of the coins but rather, given that the scheme was dependent upon telemarketing technology, was instrumental to their scheme in that Dr. Tanner was never able to see them in person, look them in the eye and gauge their sincerity and veracity— much less physically examine the coins before purchase. The Individual Defendants further compounded their misrepresentations as to the coins' grade, value and investment potential by enclosing with the coin shipments via the interstate mails (or "private or commercial interstate carrier") sales invoices which repeated (and documented) the gross misrepresentations and fraudulent overpricing as to the coins they offered and sold Dr. Tanner as "investments." Those invoices constitute correspondence sent or delivered by a private or commercial interstate carrier incorporating false and misleading statements regarding the values and grades of the coins the Individual Defendants advised Dr. Tanner to purchase as "investments."

**78.**  The means by which the Individual Defendants were able to: (1) remotely market the coins to Dr. Tanner at such exorbitantly outrageous prices in furtherance of the scheme and thereby defraud him of a substantial portion of his life savings; (2) convince him to "invest" in a phony African "gold mine" scheme; and (3) con him into shipping his coins to Defendants for "consignment sale," along with the sold-but-never-shipped "portfolio" coins, that turned out to be unabashed theft and conversion of the coins  is the unholy combination of the obscure inner workings of the retail precious metals telemarketing industry and the soulless greed of the members of the Austin Lloyd Enterprise. That all interactions, communications, and sales transpired via wire (i.e. telephone) was not coincidental or happenstance. Rather, telemarketing enabled and defined the scheme.

**79.**   As a direct and proximate result of the violations set forth above and summarized in Tables 1-3, *supra*, Dr. Tanner has been injured. The Individual Defendants' multiple, repeated violations of 18 U.S.C. §§ 1341 and 1343 are the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Dr. Tanner is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest, and attorneys' fees.

**COUNT IV**

**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT (RICO) FOR MONEY LAUNDERING
(18 U.S.C. § 1956(a)(1)) AGAINST *ALL DEFENDANTS***

**80.**   Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**81.**   Defendants White, and his shell companies, PWH, PWI, NYFG, CMBC, and Just John, Perry and CNP13, Lesak, and his shell company, Bullion Muscle, Chancey, and his shell company, BKGS, Klein, Foster, and Paradise, and his shell company, CP&A, laundered monies defrauded from Dr. Tanner and other elderly customers of Austin Lloyd and Austin Coins in violation of 18 U.S.C. § 1956(a)(1) and in furtherance of the Austin Lloyd Enterprise.

**82.**   There were numerous financial transactions authorized and conducted by White through the Austin Lloyd Enterprise which involved proceeds of specified unlawful activity (specifically, mail fraud and wire fraud under 18 U.S.C. § 1961(1)) and money laundering as defined in 18 U.S.C. § 1956(c)(7)) and in which Defendants, including White, Perry, CNP31, Lesak, Bullion Muscle, Chancey, BKGS, Klein, Foster, Paradise, and CP&A participated. Each of the Defendants, including White, Perry, CNP31, Lesak, Bullion Muscle, Chancey, BKGS, Klein, Foster, Paradise, and CP&A, had actual knowledge that the property involved in these financial transactions represented the proceeds of some form of unlawful activity. Each of the Defendants, White, Perry, CNP31, Lesak, Bullion Muscle, Chancey, BKGS, Klein, Foster, Paradise, and CP&A, had actual

36

knowledge that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, and/or the control of the proceeds of the specified unlawful activities. 18 U.S.C. § 1956(a)(1)(B)(i). In addition, or else in the alternative, each of the Defendants, including White, Perry, CNP31, Lesak, Bullion Muscle, Chancey, BKGS, Klein, Foster, Paradise, and CP&A, conducted or attempted to conduct the transactions with the intent to promote the carrying on of the specified unlawful activities. *Id.* at § 1956(a)(1)(A)(i).[25]

**83.** Defendants, including White, Perry, CNP31, Lesak, Bullion Muscle, Chancey, BKGS, Klein, Foster, Paradise, and CP&A laundered monies defrauded from Dr. Tanner and other elderly customers of the Corporate Defendants in violation of 18 U.S.C. § 1956(a)(1). As a direct and proximate result of this violation, Dr. Tanner has been injured. Pursuant to the provisions of 18 U.S.C. § 1964(c), Dr. Tanner is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest and attorneys' fees.

## V.

## FRAUD AND/OR FRAUDULENT CONCEALMENT
### (AGAINST AUSTIN LLOYD, AUSTIN COINS AND THE *INDIVIDUAL DEFENDANTS*)

**84.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and, pleading in the alternative, alleges:

**85.** Via a series of oral misrepresentations and high-pressure sales tactics (as set out in detail above), White, as principal of Austin Lloyd and Austin Coins, and Lesak and Klein, individually

---

[25] "While plaintiffs need not plead money laundering with great particularity, they must nonetheless plead all essential elements of the offenses." *Bernstein v. Misk*, 948 F. Supp. 228, 236 (E.D.N.Y. 1997) (citing *Ray v. General Motors Acceptance Corp*., No. 92 Civ. 5043, 1995 U.S. Dist. LEXIS 21467 (E.D.N.Y. Mar. 28, 1995); *see also Leung*, 387 F. Supp. 2d at 114 (Pleadings alleging money laundering are not subject to the stringent particularity requirement of Rule 9(b)).” *Schlesinger v. Schlesinger*, No. 05-CV-5016-ADS-WDW, 2007 U.S. Dist. LEXIS 110930, at *37 (E.D.N.Y. 2007).

and as officers and/or telemarketing representatives of Austin Lloyd and Austin Coins, and holding themselves out as "*investment advisors*," convinced Plaintiff: (1) to purchase grossly overpriced bullion coins as "*investments*" at exorbitant markups; (2) to lend money to Austin Lloyd for its fictitious, non-existent "gold mine" operations as an "investment"; and (3) to ship coins to Defendants ostensibly for "consignment sale" (along with the "portfolio" coins) but in fact for Defendants to steal and convert his coins, thereby defrauding Plaintiff pursuant to New York common law.

86.   In addition, the Defendants are liable for fraudulent concealment against Dr. Tanner. The elements of fraudulent concealment are identical to the elements for fraud with the addition that the defendant must have a duty to disclose material information and failed to do so.

87.   The Defendants, Austin Lloyd and Austin Coins, as well as their individual principal, White, and their telemarketing sales agents, Lesak and Klein, represented to Dr. Tanner  that they were "*investment advisors*" and thus had a duty to disclose to him that the coins they were marketing to him and advising him to purchase in keeping with the faux "investment plan" they presented for Dr. Tanner were being sold to him at prices fraudulently higher than any fair market value and that, despite their representations, that the coins they advised him to buy and sold him would never result in any investment income or financial return or security for him. The Defendants, specifically White, Lesak, and Klein, had a duty to make such disclosures based upon the "special facts" doctrine, which provides that a duty to disclose arises when one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair. The "special facts" doctrine is applicable to the present case because the withheld and hidden material information was "peculiarly within the knowledge" of the Defendants, and Plaintiff could not have discovered such information through the exercise of ordinary intelligence.

88.  The Defendants, Austin Lloyd and Austin Coins, and their individual principals and telemarketing sales agents, made the above-detailed false representations to Dr. Tanner with the intent that he rely upon them and with full knowledge that such representations were false when made. Dr. Tanner did, in fact, rely on these material and false representations when deciding to: (1) purchase the grossly overvalued coins at issue, (2) to liquidate his individual retirement accounts and invest those funds in the fake Austin Lloyd "gold mine," and (3) to ship his coin inventory to Lesak and Austin Lloyd for sale, only for Defendants to convert and steal that coin inventory (along with the "portfolio" coins) with no compensation, all of which resulted in Dr. Tanner's financial ruination and the Defendants' obscene financial gain.

89.  As a direct and/or proximate result of the false and misleading representations attributable to Austin Lloyd and Austin Coins, through their principals and telemarketing sales agents, and specifically White, Lesak and Klein, Dr. Tanner has suffered (and continues to suffer) damages arising from and related to: the amounts greatly in excess of fair market values he paid for the coins at issue, the *faux* "gold mine" investment scam, and finally the theft and conversion of his coin inventory and financial devastation at the hands of the Defendants, as well as mental anguish damages.

90.  By virtue of the confidential business relationships created and established between Dr. Tanner and the self-identified Austin Lloyd "investment advisors," White, Lesak, and Klein, the Defendants had a duty to disclose the above-described concealed material facts to Dr. Tanner. The deliberate silence, when they had a duty to speak, and the resulting nondisclosure of the above-described concealed material facts, are the equivalent of false representations and/or omissions. Such false representations and/or omissions were made knowingly and intentionally by White, Lesak, and Klein, in both their individual capacities and their capacities as agents, employees,

and/or principals of Austin Lloyd and Austin Coins, and with their knowledge and approval, or, at the very least, in reckless disregard of Plaintiff's rights and interests.

91.    Dr. Tanner justifiably relied on the false representations and/or omissions of White, Lesak, and Klein, in both their individual capacities and their capacities as agents, employees, and/or principals of Austin Lloyd and Austin Coins, to his financial ruin. Defendants' wrongful actions constitute fraud at common law.

92.    Defendants, White, Lesak, and Klein, in both their individual capacities and their capacities as agents, employees, and/or principals of Austin Lloyd and Austin Coins, concealed their wrongful actions with the intent to mislead and defraud Dr. Tanner. Dr. Tanner was not aware of, nor, through the exercise of due diligence, could he have become aware of Defendants' wrongful actions until such wrongful actions were consummated and/or brought to light by third parties. Due to the Parties' confidential business relationships, which were predicated on their mutual trust and confidence, and Defendants' superior knowledge and/or means of knowledge, White, Lesak, and Klein, in both their individual capacities and their capacities as agents, employees, and/or principals of Austin Lloyd and Austin Coins, had a duty to disclose to Plaintiff the above-detailed materially false information. Defendants' failure to do so constitutes fraudulent concealment under New York law.

93.    As a direct and/or proximate result of the false and misleading representations and omissions attributable to Austin Lloyd and Austin Coins and their principal, White, made by and through their telemarketing sales agents, specifically Lesak and Klein, Dr. Tanner has suffered (and continues to suffer) damages arising from and related to the purchase of overpriced coins, his "investment" in the faux gold mine, and the theft and conversion of his coin inventories, as well as mental anguish damages.

**COUNT VI**
**NEGLIGENT MISREPRESENTATION**
**(AGAINST AUSTIN LLOYD, AUSTIN COINS AND THE *INDIVIDUAL DEFENDANTS*)**

**94.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and pleading in the alternative, alleges that:

**95.** As set forth above, Lesak, Klein, and White, while working as telemarketing representatives of Austin Lloyd and Austin Coins, operating under a "script" prepared by Lesak and White and authorized by White, and expressly representing themselves to be "*investment advisors,*" made certain representations to Dr. Tanner in the course of their business and in precious metal coin "investment" transactions in which the Individual Defendants had a substantial monetary interest. To the extent that the acts, omissions, and representations of the Individual Defendants to Plaintiff were determined not to rise to level of fraud, Plaintiff pleads in the alternative, that the Individual Defendants were at minimum negligent in making such misrepresentations as to the coins marketed and sold to Plaintiff, as well as the "gold mine" investment scam. Specifically, the Individual Defendants negligently supplied false information that guided Dr. Tanner in his decisions to purchase the grossly over-priced coins from Austin Lloyd and Austin Coins.

**96.** Likewise, Lesak and Klein while working as telemarketing representatives of Austin Lloyd and Austin Coins, and expressly representing themselves to be "investment advisors," offered to broker the sale of Dr. Tanner's coin inventory, but when he shipped said coin inventory to Austin Lloyd/Austin Coins, they failed to remit the proceeds of any sales of the coin inventory to Dr. Tanner. To the extent that the acts, omissions, and representations of the Individual Defendants to Plaintiff were determined not to rise to level of fraud, Plaintiff pleads in the alternative, that the Individual Defendants were at minimum negligent in making such misrepresentations as to the

sales of Plaintiff's coin inventory. Specifically, the Individual Defendants negligently supplied false information that guided Dr. Tanner in his decision to ship the coin inventory for sale by Austin Lloyd and Austin Coins.

97.   The Individual Defendants failed to exercise reasonable care and competence in obtaining, confirming the accuracy of, and communicating such information to Dr. Tanner and/or making the above-described false and material misrepresentations and omissions.

98.   Dr. Tanner justifiably relied upon the Individual Defendants' negligent misrepresentations in his dealings with Austin Lloyd and Austin Coins, through White, Lesak, and Klein, which misrepresentations directly and/or proximately caused him to suffer ruinous damages to the financial benefit of Austin Lloyd and Austin Coins and the Individual Defendants. The Individual Defendants' wrongful conduct, which is attributable to Austin Lloyd and Austin Coins, constitutes negligent misrepresentation under New York common law.

**COUNT VII**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(AGAINST AUSTIN LLOYD, AUSTIN COINS AND THE *INDIVIDUAL DEFENDANTS*)**

99.   The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and, in addition, or else pleading in the alternative, alleges:

100. The Individual Defendants' actions described herein, all of which are attributable to Austin Lloyd and Austin Coins, constitute deceptive acts and practices in the conduct of business, substantially affecting trade or commerce in New York in violation of the New York Consumer Protection from Deceptive Acts and Practices, Gen. Bus. Law § 349.

101.   More specifically, the Individual Defendants, individually and through the Austin Lloyd and Coins principals, telemarketer employees and representatives, knowingly and intentionally utilized

42

unlawful, false, misleading, deceptive, and unconscionable high-pressure sales tactics and misrepresentations to convince Dr. Tanner to purchase grossly over-priced coins from Austin Lloyd and Austin Coins, to liquidate his individual retirement account(s) to "invest" in a fictitious, non-existent "gold mine," and to ship his coin inventory (along with the "portfolio" coins) to Austin Lloyd/Austin Coins for sales which never occurred or for which Dr. Tanner received no monies, through one or more of the following deceptive acts or practices, including:

a.  Holding themselves out as "investment advisors" while having no investment expertise;

b.  Misrepresenting attributes, grades, and values of precious metal coins;

c.  Claiming that the coins could be held for a short period and then be sold to ready buyers for a large profit;

d.  Advising customers to purchase "unique," "rare, and "desirable" bullion coins, when, in fact, there is nothing unique or rare about the coins;

e.  Using grading and marketing to deceptively sell bullion at a premium as some type of "modern numismatics" or "signed, graded bullion," even though there are very large populations of the high-grade coins and/or the "certification" is commonly duplicated with minor expense;

f.  Misrepresenting the market values of the coins to prevent or delay customers from determining the actual market price of the coins;

g.  Claiming a volatile market based upon the spot price of gold yet selling numismatic and bullion coins at such exorbitant and fraudulent prices to make "market price" nothing but a gimmick;

h.  Misrepresenting that they had a "gold mine" and convincing Plaintiff to invest in the non-existent "gold mine" with promises of significant investment returns which never occurred;

i.  Convincing Plaintiff to ship his coins to Defendants for resale, but upon receipt of the coins, simply absconding with those coins, as well Plaintiff's "portfolio" coins, and paying Plaintiff nothing in return; and

j.  Various other acts and practices that may be uncovered during discovery.

**102.** As a direct and proximate result of the Individual Defendants' unlawful, unfair, and deceptive acts and practices, all of which are attributable to Austin Lloyd and Austin Coins, Dr. Tanner has suffered actual damages of at least **One Million, Seven Hundred Ninety-Six Thousand, Eight Hundred and 00/100 Dollars ($1,796,800.00)**.

**COUNT VIII**
**NEGLIGENCE**
**(AGAINST AUSTIN LLOYD, AUSTIN COINS AND THE *INDIVIDUAL DEFENDANTS*)**

**103.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length and, in addition, or else pleading in the alternative, alleges:

**104.** Defendants negligently valued, promoted, marketed, advertised, and sold grossly overvalued coins to Plaintiff, convinced him to "invest" in the "gold mine" investment scam through a purported "loan," and negligently failed to compensate Plaintiff for coins he shipped to Defendants for sale, as well as the "portfolio" coins. This violated and breached Defendants' duty to Plaintiff to exercise reasonable care in valuing, promoting, marketing, advertising, and selling the coins to Plaintiff and selling the coins for Plaintiff. Defendants' wrongful conduct directly and/or proximately caused Plaintiff to suffer damages. Defendants' wrongful conduct constitutes negligence at common law.

**COUNT VII**
**MONEY HAD AND RECEIVED**
**(AGAINST THE "*AIDING AND ABETTING*" DEFENDANTS)**

**105.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length and, in addition, or else pleading in the alternative, alleges:

**106.** By their above-described wrongful actions and/or inaction: (1) each of the "Aiding and

Abetting" Defendants received money belonging to Plaintiff, (2) each of the "*Aiding and Abetting*" Defendants benefitted from receipt of the money, and (3) under principles of equity and good conscience, the "Aiding and Abetting" Defendants should not be permitted to keep the money. The "Aiding and Abetting" Defendants, therefore, should be compelled to refund such wrongfully received and retained funds to Plaintiff under the equitable doctrine of money had and received.

**COUNT VIII**
**UNJUST ENRICHMENT**
**(AGAINST THE "*AIDING AND ABETTING*" DEFENDANTS)**

**107.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length and, in addition, or else pleading in the alternative, alleges:

**108.** The "Aiding and Abetting" Defendants (and possibly other persons and entities, as-yet unidentified) have been unjustly enriched by receipt of funds of and from Austin Lloyd and/or Austin Coins and White which were obtained through fraud and/or stolen from Plaintiff.

**109.** Accordingly, Plaintiff seeks to impose a constructive trust over (and recover) all amounts by which the "Aiding and Abetting" Defendants have been unjustly enriched.

**ALTER-EGO**

**110.** Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**111.** Alter-ego liability is established upon a showing that a defendant has complete domination of a corporation in respect to the transaction at issue and that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury. Because a decision to pierce the corporate veil will necessarily depend on the attendant facts and equities of the case at issue, there are no definitive rules governing the circumstances when this power may be exercised.

45

**112.** Based upon information and belief, each of the Individual Defendants, White, Lesak, and Klein individually and collectively, use the corporate form of Austin Lloyd and Austin Coins as an alter-ego and as a mere tool or business conduit. The Individual Defendants completely dominate Austin Lloyd and Austin Coins to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between Austin Lloyd, Austin Coins, and/or White and the other Individual Defendants, and there is an unclear allocation of profit and losses between Austin Lloyd and Austin Coins and the Defendants. In short, Austin Lloyd and Austin Coins are substantially one and the same with each other and one and the same with White, Lesak, and Klein or some of them, and the relationship between Austin Lloyd/Austin Coins and the Individual Defendants (or some of them) is an illegitimate use of the corporate form.

**113.** Pleading further, based on information and belief, Defendants P. White Holdings, LLC ("PWH"), P White Inc. ("PWI"), New York Federal Gold, LLC ("NYFG"), Cash Money Bullion Corp. ("CMBC"), and Just John, LLC ("Just John") are each owned, operated, and controlled solely and entirely by White. Upon information and belief, White uses the corporate forms of PWH, PWI, NYFG, CMBC, and Just John as alter-egos and as mere tools or business conduits. White completely dominates PWH, PWI, NYFG, CMBC, and Just John to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between Austin Lloyd, Austin Coins, and/or White and PWH, PWI, NYFG, CMBC, and Just John, and there is an unclear allocation of profit and losses between PWH, PWI, NYFG, CMBC, and Just John and White. In

short, PWI, NYFG, CMBC, and Just John are each substantially one and the same with White, and the relationship between White and each of these Defendants is an illegitimate use of the corporate form.

**114.** Pleading further, based on information and belief, Defendant CNP13, Inc. ("CNP13") is owned, operated, and controlled solely and entirely by White and/or Charisma Perry ("Perry"). Upon information and belief, White and/or Perry use the corporate form of CNP13 as an alter-ego and as a mere tool or business conduit. White and/or Perry completely dominate CNP13 to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between White and/or Perry and CNP13, and there is an unclear allocation of profit and losses between CNP13 and White and/or Perry. In short, CNP13 is substantially one and the same with White and/or Perry, and the relationship between White and/or Perry and CNP13 is an illegitimate use of the corporate form.

**115.** Pleading further, based on information and belief, Defendant Bullion Muscle Inc. ("Bullion Muscle") is owned, operated, and controlled solely and entirely by Eric P. Lesak ("Lesak"). Upon information and belief, Lesak uses the corporate form of Bullion Muscle as an alter-ego and as a mere tool or business conduit. Lesak completely dominates Bullion Muscle to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between Austin Coin and/or White and Bullion Muscle, and there is an unclear allocation of profit and losses between

Lesak and Bullion Muscle. In short, Bullion Muscle is substantially one and the same with Lesak, and the relationship between Lesak and Bullion Muscle is an illegitimate use of the corporate form.

**116.** Pleading further, based on information and belief, Defendant BKGS Holdings, Inc.. ("BKGS") is owned, operated, and controlled solely and entirely by Brandon E. Chancey ("Chancey"). Upon information and belief, Chancey uses the corporate form of BKGS as an alter-ego and as a mere tool or business conduit. Chancey completely dominates BKGS to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between Austin Coin and/or White and BKGS, and there is an unclear allocation of profit and losses between Chancey and BKGS. In short, BKGS is substantially one and the same with Chancey, and the relationship between Chancey and BKGS is an illegitimate use of the corporate form.

**117.** Pleading further, based on information and belief, Defendant Christopher Paradise & Associates, Inc. ("CP&A") was owned, operated, and controlled solely and entirely by Christopher Paradise, deceased, and is now owned, operated, and controlled by the representative(s) of the estate of Christopher Paradise. Upon information and belief, Christopher Paradise, deceased, used the corporate form of CP&A as an alter-ego and as a mere tool or business conduit. Christopher Paradise, deceased, completely dominated CP&A to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between Austin Lloyd, Austin Coins, and/or White and CP&A, and there was an unclear allocation of profit and losses between CP&A and Christopher Paradise, deceased. In short, CP&A was substantially one and the same with

48

Christopher Paradise, deceased, and the relationship between Christopher Paradise, deceased, and CP&A was an illegitimate use of the corporate form.

## RESPONDEAT SUPERIOR

**118.** Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**119.** Defendants Austin Lloyd and Austin Coins also are liable for the above-detailed wrongful acts committed by their principals, agents, representatives, and employees during the course and scope of their agency/employment by Austin Lloyd and Austin Coins; to wit, the principals', agents', employees', and representatives' wrongful conduct was committed (i) within their general authority, (ii) in furtherance of Austin Lloyd's/Austin Coins' business, and (iii) to accomplish the objective for which the principals/agents/employees/representatives were retained, all of which directly and/or proximately caused Plaintiff to suffer damages to the financial benefit of Defendants—and for which Defendants are liable under the doctrine of *respondeat superior*.

## RELIEF REQUESTED

**120. RECISSION**.  Based on Defendants' above-described wrongful conduct, Plaintiff is entitled to recission of the transaction(s) at issue by which Defendants fraudulently marketed and sold the grossly overvalued coins to Plaintiff. All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

**121. ACTUAL AND CONSEQUENTIAL DAMAGES.**  As direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered (and continues to suffer) damages in the form of, inter alia, the amounts paid to Defendants for the coins in excess of their value, the amounts Plaintiff lost in the "gold mine" investment scam, and the amounts Plaintiff lost in the conversion scam. Plaintiff is entitled to recover consequential damages related to lost investments when he

was lured into liquidating his retirement account to invest in the "gold mine" investment scam, as well as taxes and penalties incurred and the mental anguish he has suffered in connection with these transactions—in an amount to be determined by the trier of fact. All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

122. **TREBLE DAMAGES.** Plaintiff also is entitled to treble damages for Defendants' knowing, willful and intentional wrongful conduct pursuant to 18 U.S.C. § 1964(c) and in violation of New York's GBL § 349 (up to the applicable cap). All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

123. **EXEMPLARY DAMAGES**. Defendants' wrongful actions (and failure to disclose such wrongful actions) were committed intentionally, willfully, with malice and/or with conscious and/or reckless disregard for Plaintiff's rights and interests. Accordingly, Plaintiff also is entitled to an award of punitive damages against Defendants, both as punishment and to discourage such wrongful conduct in the future.

124. **ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS**. Plaintiff also is entitled to recover his reasonable and necessary attorneys' fees, litigation expenses and court costs actual damages to be determined by the trier of fact.

**WHEREFORE**, Plaintiff, James T. Tanner, requests judgment in his favor and against the Defendants, jointly and severally, awarding compensatory damages for all actual and consequential losses, treble damages under 18 U.S.C. § 1964(c), exemplary damages, and all amounts by which Defendants have been unjustly enriched; directing an equitable accounting for all benefits, consideration and profits received, directly or indirectly, by Defendants, including the imposition of a constructive trust and the voiding of unlawful transfers; and awarding attorneys' fees and litigation expenses pursuant to 18 U.S.C. § 1964(c) and New York G.B.L. § 349(h) and

the costs of suit pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d); together with pre-judgment interest pursuant to New York C.P.L.R. § 5004 or any higher applicable rate and post-judgment interest at the highest legal rate, and such other and further relief as the Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all of his claims and causes of action so triable.


Dated: Thornwood, New York
          November 26, 2024

**LAW OFFICES OF KENNETH G. WALSH**


By:   /s/ Kenneth G. Walsh
          Kenneth G. Walsh (1654)
          59 Kensico Road, Suite 7
          Thornwood, New York 10594
          (929) 241-7307
          *kwalsh@kgwalshlegal.com*

          -and-

**STEVENS LAW FIRM**

R. Lyn Stevens (pro hac vice forthcoming)
210 Clearview Avenue, Suite C
Friendswood, Texas 77546
(409) 880-9714
*Lyn@Stevens.Law*
Texas Bar No. 19189020

*Attorneys for Plaintiff,*
*James T. Tanner*